UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In Re: | ) | Case No. 05-85871 |
| | ) | |
| SANITARY AND IMPROVEMENT | ) | CHAPTER 9 |
| DISTRICT # 425 OF DOUGLAS | ) | PLAN OF ADJUSTMENT |
| COUNTY, NEBRASKA, | ) | |
| | ) | |
| Debtor. | ) | |

This Plan of Adjustment (this "Plan") is proposed and made by Sanitary and Improvement District #425 of Douglas County, Nebraska (the "District"). The provisions of this Plan have been promulgated to meet the confirmation standards under Chapter 9 of the United States Bankruptcy Code (the "Code"). This Plan should be carefully reviewed in conjunction with the Disclosure Statement which has been filed concurrently herewith, as may be amended by filing with the United States Bankruptcy Court for the District of Nebraska (the "Court").

## I. DEFINITIONS.

All capitalized terms shall have the meaning given to them herein, unless context clearly requires otherwise. Capitalized terms defined in the Code and not otherwise defined herein shall have the meaning ascribed to them in the Code.

**Administrative and Priority Claims** shall mean and include the allowed (i) actual and reasonable costs and expenses incurred for services in connection with this case, including the fees of the District's attorneys, accountants and other professionals approved by the Court; (ii) all of the District's cost in preserving the assets of District's bankruptcy estate; and (iii) any and all other claims granted priority status under Section 507(a) of the Code.

**Board** shall mean the Board of Trustees of the District, as duly elected or appointed under Nebraska law.

**Bond Committee** shall mean not fewer than one (1) nor more than five (5) individuals selected by the Committee to act on behalf of the Class B Bond holders.

**Claims** shall mean (i) a claim which has been listed by the District on its schedules and (ii) any other claim as the term is defined in Section 101(5) of the Code.

**Class A Bonds** shall mean those existing bonds issued by the District on or before the filing date and any bonds issued in exchanged therefore or to refund any such bonds.

**Class B Bonds** shall mean bonds issued to holders of Construction Fund Warrants (defined below) pursuant to the terms of this Plan.

**Committee** shall mean the Official Committee of Unsecured Creditors.

**Confirmation Order** shall mean the order signed and entered by the Court confirming this Plan.

**Construction Fund** shall mean bond fund/bond sinking fund/construction fund of the District maintained by the County Treasurer of Douglas County, Nebraska, as the ex officio Treasurer of the District, the monies in which are held for the purpose of making payment upon the Construction Fund Warrants (defined below) and for the payment of the principal and interest on the Class A Bonds and Class B Bonds of the District.

**Construction Fund Warrants** shall mean those warrants payable from the Construction Fund of the District issued in accordance with Neb. Rev. Stat. §31-755, for capital outlay expenditures and interest and sold to holders of the same as investments and not in exchange for services rendered by the holder of the warrant or the immediate or remote transferor of the warrant.

**Creditor** shall mean the owner or holder of any claim.

**Disclosure Statement** shall mean the document filed in this case by the District pursuant to Section 1125 of the Code, as may be amended, modified or supplemented by the District and approved by this Court.

**Effective Date** shall mean the first date upon which Class B Bonds are issued, which

2

shall not be more than ninety (90) days following the Confirmation Order.

**Filing Date** shall mean the date upon which the Petition seeking voluntary relief pursuant to provisions of Chapter 9 of the Code was filed by the District, which date is October 26, 2005.

**Final Order** shall mean an order of judgment of a court which (i) shall not be reversed, stayed, modified or amended and the time for which to appeal or seek review or rehearing shall have expired or (ii) if appealed, the operative effects of such appealed order or judgment shall not have been stayed or superseded so that the appealed order or judgment is legally enforceable.

**General Fund** shall mean the funds of the District maintained by the County Treasurer of Douglas County, Nebraska, as the ex officio Treasurer of the District, and accumulated and held for the purpose of making payment upon General Fund Warrants (defined below).

**General Fund Warrants** shall mean those warrants payable from the General Fund of the District sold to holders of the same as investments or in exchange for services rendered by the holder of the warrant or the immediate or remote transferor of the warrant.

**Termination Date** shall mean the date upon which the District has made payment in full upon all outstanding Class B Bonds or the date thirty (30) years from the Effective Date, whichever occurs first.

## II. CLASSES AND TREATMENT OF CREDITORS

1. <u>Administrative and Priority Claim Holders</u>. The holders of Administrative and Priority Claims shall be paid in full. The Administrative and Priority Claims currently consist of expenses for services rendered by and for reimbursement of out-of-pocket expenses of the District's legal counsel, Pansing Hogan Ernst & Bachman LLP of Omaha, Nebraska, services rendered by and for reimbursement of out-of-pocket expenses of the legal counsel of the Committee, Gross & Welch, PC, LLO, and the providers of utility, maintenance, and repair services reasonably necessary for the continued operations of the District, including claims

3

submitted to this Court by the District via Motions for Payment of Administration Expenses dated February 16, 2006, August 11, 2006, and September 14, 2006. All Administrative and Priority Claims, other than those of Pansing Hogan Ernst & Bachman LLP and Gross & Welch, PC, LLO, incurred and to be incurred subsequent to the Effective Date shall be paid as follows: such costs and expenses up to and including the date of the Effective Date shall be paid from the District's General Fund; thereafter, all Administrative and Priority Claims shall be paid from the District's General Fund as they become due and as are approved by the Board. Fees of attorneys for the District and the Official Committee of Unsecured Creditors and warrants issued in payment thereof, shall be paid from the Construction Fund up to entry of the Effective Date. All Administrative and Priority Claims are to be paid in full. Claims of Pansing Hogan Ernst & Bachman LLP and Gross & Welch, PC, LLO arising from services performed prior to the Effective Date shall be paid in full from the Construction Fund. Thereafter, Pansing Hogan Ernst & Bachman LLP and Gross & Welch, PC, LLO shall be paid from the General Fund.

2. <u>Class A Bond Holders</u>. The holders of Class A Bonds of the District shall be paid principal and accrued interest in full. Holders of Class A Bonds shall be paid in accordance with the terms of the Class A Bonds, with payments of interest and principal being made at regular intervals as legally required thereunder. Payment to the holders of the Class A Bonds shall be made by funds held in the Construction Fund. Payment to the holders of Class A Bonds shall not in any way be affected by this Plan. The holders of the Class A Bonds of the District shall be paid in full, and the holders of the Class A Bonds are not impaired, as the term is used in the Code.

3. <u>General Fund Warrant Holders</u>. The owners of the General Fund Warrants shall be paid principal and accrued interest in full. Payment of General Fund Warrants is necessary for the continuation of basic necessities of the District, including basic utilities and reasonable

4

property maintenance expenditures.  Within ninety (90) days of the Effective Date, the owners of General Fund Warrants shall be paid in full for all accrued and unpaid interest or principal due and owing under the terms of the General Fund Warrants.  Thereafter, General Fund Warrants shall be paid in accordance with the stated terms thereof.  The owners of General Fund Warrants shall be paid in full and are not impaired, as the term is used in the Code.

4. <u>Construction Fund Warrant Holders</u>.  The claims of the holders of Construction Fund Warrants are impaired, as the term is used in the Code.  In full and complete satisfaction of the Claims of the Construction Fund Warrant holders, the Construction Fund Warrants shall be exchanged for Class B Bonds.

### III.  CLASS B BOND ISSUANCE

This Plan requires and the Bankruptcy Court will be requested as part of the Confirming Order to require the holders of Construction Fund Warrants to deliver to First National Bank of Omaha or its designee (the "Paying Agent") any Construction Fund Warrants held by creditors. No payment shall be made to the holder of any Construction Fund Warrant unless said holder has delivered to the Paying Agent the physical Construction Fund Warrant issued by the District or, in the event that the Construction Fund Warrant is lost or destroyed, an Affidavit of Lost or Destroyed Security and Indemnification thereon.  Construction Fund Warrants must be sent with a completed IRS Form W-9 in order for such Construction Fund Warrants to be exchanged.

In exchange for Construction Fund Warrants, the Paying Agent shall deliver to the creditor having provided the Construction Fund Warrant to the Paying Agent, or to such creditor's assignee, a Class B Bond in the face amount of the Construction Fund Warrant delivered by the Creditor, plus any accrued and unpaid interest thereon.  Multiple Construction Fund Warrants may be combined by the Paying Agent into a single Class B Bond, the face value of which is equal to the value of all Construction Fund Warrants provided by such Creditor,

including unpaid principal and interest. Class B Bonds shall be assigned a CUSIP number by the Paying Agent.

All Class B Bonds shall be issued within one (1) year of the entry of the Confirmation Order. No preference shall be given to the Class B Bonds based upon date of issuance. For the purpose of determining interest accrual of the Class B Bonds, interest on all bonds shall be deemed to accrue from the date upon which the first series of Class B Bonds is issued. Interest accruals on all Construction Fund Warrants will cease on the day that the Class B Bonds are first issued.

The Class B Bonds issued pursuant to this Plan shall bear clear and unequivocal language identifying that the Class B Bonds are (i) subject to the payment terms set forth in the Plan, (ii) are not guaranteed to pay full interest or return principal face value, and (iii) are not subject to guarantee under Neb. Rev. Stat. §31-755. The Class B Bonds shall accrue simple interest at a rate of four percent (4%) annually, subject to the terms of this Plan.

In order to ensure the Construction Fund Warrant holder cannot continue to hold Construction Fund Warrants with a view towards redemption, any and all outstanding warrants not delivered to the Paying Agent within six (6) months of the date of the Confirmation Order shall be deemed cancelled and of no further force and effect and the Court shall be requested, in the Confirmation Order, to permit Paying Agent to refuse to honor, accept, or exchange Construction Fund Warrants after such time.

## IV. GENERAL FUND BOND ISSUE

If deemed advisable by the District, the District may issue General Fund Bonds for the limited purpose of obtaining funds necessary to make payments on General Fund Warrants issued and outstanding prior to and during the pendancy of this bankruptcy. Such General Fund Bonds shall be placed by private issuance through the Paying Agent. Such General Fund Bonds

6

shall have priority in payment over Class B Bonds issued under this Plan, and shall be given priority afforded to Bonds issued by sanitary and improvement districts under Neb. Rev. Stat. §31-755. General Fund Bonds issued shall be issued according to ordinary terms of issuance taking into account then current market conditions. General Fund Bonds shall not be issued at an interest rate greater than five percent (5.0%). The term of the General Fund Bonds shall not exceed seven (7) years.

## V. OPERATION OF THE DISTRICT

From the date upon which the Confirmation Order is entered and until the Termination Date, the operation of the District shall be governed by the terms of this Plan. This Plan may not be amended except by Court order or by written agreement of the District and the Bond Committee. Any written agreement to amend this Plan shall not be effective unless signed by appropriate representatives of the District and the Bond Committee, and notice of any such amendments shall be filed with this Court and distributed to Creditors.

A. **District Funds and Income.**

1. District Funds. All monetary assets of the District are held in either the General Fund or the Construction Fund. As of the date of this Plan, the total assets held in the General Fund are approximately ($86,497) and the total assets held in the Construction Fund are approximately ($1,493,781).

The General Fund exists for the purpose of holding funds used in the operation of the District and for payment of General Fund Warrants. Following confirmation of the Plan, the General Fund would hold amounts used for the operating budget of the District, payment of General Fund Warrants, amounts held by the District as an emergency fund, as set forth below, and a sinking fund for payment of General Fund Bonds, if General Fund Bonds are issued pursuant to the provisions of this Plan.

7

The Construction Fund receives an allocated portion of the District's tax revenues. Amounts held in the Construction Fund following confirmation of this Plan will consist of amounts held specifically for payment of Administrative Claims specified herein and for payment of the paving project, as set forth below, as well as a sinking fund for payment of Class A Bonds. Remaining amounts in the Construction Fund will be either retained or distributed, as set forth in this Plan, to the Class B Bondholders.

2. <u>District Tax Rate</u>**.** The current tax rate for real estate located within the jurisdiction of the District is One and 5/100 Dollars ($1.05) per One Hundred Dollars ($100) of assessed valuation. This One and 5/100 Dollars ($1.05) tax levy (the "Tax Levy") shall not be increased without the written consent of the District and the Bond Committee. The income from the Tax Levy shall be distributed among the General Fund and the Construction Fund as follows:

(i) if General Fund Bonds, as contemplated by this Plan, are not issued, twenty cents ($0.20) of the Tax Levy shall be assigned to the General Fund, and eighty-five cents ($0.85) shall be assigned to the Construction Fund.

(ii) if General Fund Bonds are issued, funds from the Tax Levy shall be assigned as follows:

(a) For five (5) years from the date of issuance from the date of General Fund Bonds, forty-five cents ($0.45) of the Tax Levy shall be assigned to the General Fund, and sixty cents ($0.60) shall be assigned to the Construction Fund.

(b) For years following the fifth (5th) year after the issuance of the General Fund Bonds until the Termination Date,

8

twenty cents ($0.20) of the Tax Levy shall be assigned to the General Fund and eighty-five ($0.85) cents of the Tax Levy shall be assigned to the Construction Fund.

3. <u>Tax Rate Adjustment</u>.  In the event that the District is able to meet all payment and operating obligations which are to be paid from the General Fund, is not in default under the terms of any securities it has issued, has paid in full all General Fund Bonds issued, has not less than One Hundred Twenty-five Thousand Dollars ($125,000) in its emergency fund, as identified below, and has established a sinking fund for all outstanding bonds, other than Class B Bonds, in an amount equal to no less than one hundred forty percent (140%) of the annual debt service for such bonds, the District may reduce the Tax Levy and the portion of the Tax Levy assigned to the General Fund by the same amount.  This reduction in the overall Tax Levy obtained by reduction in the General Fund portion of the Tax Levy may be used by the District, in its discretion, to provide tax relief to residents and other owners of real estate in the District.  Such reduction shall not exceed eight cents ($0.08).

B. **Emergency Fund.**  The District may, at its discretion, retain up to Fifty Thousand Dollars ($50,000) per year from the District's operating budget as an emergency fund. The emergency fund shall be used solely in the event of an emergency, defined for the purposes of this Plan as an event or circumstance requiring immediate corrective action or an event which occurs where further significant damage or expense is likely to occur unless corrective action is taken within a reasonable period of time.  In no event shall the emergency fund be permitted to accumulate more than Two Hundred Fifty Thousand Dollars ($250,000).

In the event of an emergency resulting in a single expense greater than either seventy-five percent (75%) of the District's budget or greater than seventy-five percent (75%) of the

9

accumulated emergency fund of the District, the District shall have the authority to declare an emergency. Such declaration shall be made by sending written notice to the Bond Committee, accompanied by a written report of a civil engineer or other duly qualified expert setting forth the estimated cost of work to be performed, as well as a resolution of the Board identifying that such expense is necessary for the protection of assts of the District (collectively, the "Emergency Notice").

After providing the Emergency Notice to the Bond Committee, the District may expend such amounts from the emergency fund as necessary to remedy the condition set forth in Emergency Notice. However, in the event that the Bond Committee has determined that an emergency does not exist, as defined herein, that the expense is not greater than seventy-five percent (75%) of the emergency fund or seventy-five percent (75%) of the District's operating budget, or that the cost of remedial action set forth in the Emergency Notice is not reasonable, the District may, by properly filed motion, ask the Bankruptcy Court for a determination in accordance with this Plan. The Bankruptcy Court, upon receipt of a duly filed motion, will determine whether and to what extent the District may use the emergency fund with regard to a particular Emergency Notice. The Court shall retain jurisdiction for this purpose, and may receive evidence, testimony and argument in determining whether or not the event or circumstance detailed from the Emergency Notice properly allowed use of the emergency fund by the District under this Plan.

In the event that the expense detailed in the Emergency Notice is greater than the amount held in the emergency fund of the District, the emergency fund shall be depleted prior to the use of funds from other sources available under this Plan. In the event that the District has delivered an Emergency Notice to the Bond Committee, and has or expects to deplete the available emergency fund, and the remaining annual budget is not sufficient to pay expenses associated

with such Emergency Notice, the District shall provide a notice of budget deficiency (the "Deficiency Notice") to the Bond Committee. The Deficiency Notice shall specify the deficiency in the District's budget related to the associated Emergency Notice, taking into account the expenditure of funds held in the emergency fund. Upon delivery of the Deficiency Notice to the Bond Committee, the budget of the District shall be increased by the amount specified in the Deficiency Notice for the expressed purpose of allowing the District to complete work specified in the Emergency Notice related thereto. If funds required to remedy such deficiency are not available from the General Fund such funds may be spent from the Construction Fund. No increase in the budget of the District created by the delivery of a Deficiency Notice shall be taken into account in determining the budget or increase in budget of the following fiscal years of the District.

C.    **District Operating Budget.** The budget of the District in the year following the Confirmation Order shall be One Hundred Seventy-five Thousand Dollars ($175,000). For each year thereafter, the budget shall increase three percent (3%) annually. The District shall be required to pay its ordinary operating expenses and maintenance expenses within the terms of the budget, and may not exceed the budget without the written consent of the Bond Committee. The operating and maintenance budget shall not include debt service expense of the General Fund Warrants, General Fund Bonds, or Class A Bonds, or payment thereupon. No portion of the budget of the District shall be used to maintain or improve real estate which is not owned by the District and which the District does not have a contractual or legal obligation to maintain or improve.

D.    **Bond Sinking Funds.** The District shall maintain sinking funds related to the Class A Bonds and General Fund Bonds. The sinking funds shall be kept in an amount determined by the District to be necessary to meet ongoing payment obligations of the Class A

Bonds and the General Fund Bonds, and shall not exceed two hundred percent (200%) of the annual debt service upon the applicable bonds for the first ten (10) years following the Effective Date, and one hundred fifty percent (150%) of such annual debt service thereafter.

E.  **Payment of Unimpaired Debts.**  The District shall, within ninety (90) days following the entry of the Confirmation Order, bring current any arrearages allowed to accrue before or during the pendancy of this bankruptcy on any General Fund Warrants, Class A Bonds, and any other payment obligation related to securities issued by the District except payments upon Construction Fund Warrants issued prior to the commencement of this bankruptcy proceeding.  Payments on General Fund Warrants, General Fund Bonds, Class A Bonds and of securities issued by the District before, during and after the pendancy of this bankruptcy shall be kept current and the District shall not allow such securities to go into default under their terms, except as permitted by this Plan.

F.  **Payment of Class B Bonds.**  Following the payment and reservation of other amounts contemplated by this Plan, the Construction Fund, including the income attributed thereto and funds held therein, shall be used in payment of the Class B Bonds. The income of the District from the Tax Levy, sewer connection fees, and all other income, less amounts required to be paid by this Plan, including payment on General Fund Warrants, General Fund Bonds, Class A Bonds, and the budget, emergency fund, and bond sinking fund set asides, shall annually be computed as the amount available for distribution to the Class B Bond holders.  In any year during which there are no funds available for distribution to the Class B Bond holders, or amounts available for distribution, including amounts accrued from previous years, do not total at least One Million Dollars ($1,000,000), the District shall not be required to make a distribution to Class B Bond holders.  In any year that there is greater than One Million Dollars ($1,000,000) available for distribution to the Class B Bond holders, the District shall, through the

12

Paying Agent, distribute such amounts available to the registered owners of the Class B Bonds, on a pro rata basis, with the distributive share received by individual bondholders being equal to their share of the Class B Bonds owned..  For tax accounting purposes, such distributions shall first be applied to principal, and then interest.  In any year in which a distribution is made to the Class B Bond holders, such distribution shall be accompanied by an IRS Form 1099 prepared by the Paying Agent.  It is intended, to the greatest degree possible under the terms of this Plan, the Class B Bonds shall be issued, paid and redeemed in a manner consistent with and allowing for tax exempt status under applicable Internal Revenue Service regulations.

The Paying Agent shall be paid the sum of Twenty-five Hundred Dollars ($2,500) in any year in which Class B Bonds are issued or in which distributions are made to Class B Bond holders.  No payment shall be paid to the Paying Agent for providing services related to the Class B Bonds in any year which no Class B Bonds are issued and no distributions are made on the Class B Bonds.  Nothing in this paragraph shall be deemed to prohibit the District from compensating the Paying Agent, or any other party, for services provided in the servicing of securities issued by the District other than Class B Bonds.

Distributions shall be made to the Class B Bond holders pursuant to this Plan until all amounts of principal and interest due under the Class B Bonds are paid in full, or until the Termination Date, whichever occurs first.  In the fiscal year during which the Termination Date occurs, any funds which would be available for distribution to the Class B Bond holders shall be so distributed, without regard to the One Million Dollar ($1,000,000) minimum distribution amount set forth above.  In no event shall distributions be made in excess of amounts necessary to pay principal and interest outstanding on the Class B Bonds.  If, during the year in which the Termination Date occurs, the Class B Bonds have not been paid in full, and there are funds held in the emergency fund of the District, the District shall distribute funds held in the emergency

fund to the Class B Bond holders.

Regardless of whether the Class B Bonds have been paid all principal and accrued interest, such bonds shall not be honored following the Termination Date, and shall not continue to be an obligation of the District past such date. No Creditor of the District or Class B Bond holder shall have any right to receive payment on the Construction Fund Warrants or the Class B Bonds except as set forth in this Plan.

G.   **Required Remedial Paving Project.**  The District estimates that approximately One Hundred Forty-two Thousand Five Hundred Fifty-eight Dollars ($142,558) of paving maintenance and repairs must be completed before the end of 2007. Such maintenance and repairs include, but are not limited to, removing damaged and insufficient pavement, supplementing and compacting soil, and replacing the removed pavement with thicker pavement installation (the "Paving Project"). The Paving Project is necessary for maintaining proper residential and emergency access to the District, and maintaining the value of the real estate within the District.

The District has already begun to solicit bids for the Paving Project. The District shall select a qualified firm to perform the Paving Project in compliance with the description and estimate of costs prepared for the District relating to the Paving Project. The District shall select the lowest bid for the Paving Project, provided that such bid is not submitted by an individual or firm which the District believes is not sufficiently experienced or capable of performing the Paving Project to the necessary standards of completion.

The costs of the Paving Project are not available to be spent by the District through its budget, and funds are not available in the General Fund to pay such an expense. In order to avoid the interest and transactional expenses associated with paying the costs of the Paving Project through General Fund Warrants, the District is authorized to pay for the Paving Project

14

from amounts immediately available from the Construction Fund. The one time expense of the Paving Project shall in no way affect the operating budget of the District or the emergency fund of the District established by this Plan.

## VI. IMPLEMENTATION OF THE PLAN

The implementation and consummation of this Plan shall occur as follows:

A. **Voting Procedures and Effective Date.** Copies of this Plan and the accompanying Disclosure Statement shall be sent by the District to all Construction Fund Warrant holders, along with a ballot included for the purpose of voting in favor of or against the Plan. Only by completing, signing and returning the ballot may a creditor vote for or against this Plan.

In order for this Plan to become effective, the following conditions must be met:

(a) The Plan must have been accepted by the holders of at least two-third in amount and more than one-half in number of the Construction Fund Warrant holders.

(b) The Court shall have confirmed the Plan as required by the terms of this Plan and by Section 1129 and Section 943 of the Bankruptcy Code.

B. **Other Documents.** All parties, by agreeing to the terms of this Plan, agree to execute and deliver, as appropriate, all documents reasonably required to implement and effectuate the terms of this Plan.

## VII. RETENTION OF JURISDICTION, ENFORCEMENT, SETTLEMENT OR ADJUSTMENT TO CLAIMS

The Court shall retain exclusive jurisdiction of all matters arising under, or related to, this case, until this case is closed, specifically limited, however to the following:

A. To classify, allow or disallow Claims, direct distributions under the Plan and adjudicate all controversies concerning classifications, objections to or allowances of any Claim.

B. To enforce post confirmation performance of the Plan against any person with regard to the District's Chapter 9 estate, but not otherwise.

C. To herein determine all Claims arising from the rejection of executory contracts and leases, if any, which are included in the District's Chapter 9 estate and to consummate rejection and termination thereof in connection with the Debtor's Chapter 9 estate, but not otherwise.

D. To liquidate damages or estimate Claims in connection with any disputed, contingent, or unliquidated claims.

E. To adjudicate the validity of or the authority of the District to make or undertake any purchase, sale or contract made or undertaken by the District during the pendency of the District's Chapter 9 case.

F. To recover all assets and property belonging to the District's Chapter 9 estate wherever located.

G. To hear and determine all actions and proceedings which relate to preconfirmation matters brought by the Debtor arising in or relating to this case or arising under the Bankruptcy Code, whether such action or proceeding is brought before or after the Filing Date.

H. To hear and determine all controversies, suits, and disputes that may arise as to preconfirmation matters and the interpretation of or enforcement of the Plan or the provisions of the Disclosure Statement.

I. To hear and determine all requests for compensation and/or reimbursement of expenses by professionals retained by the District which may be made after the Confirmation Date.

J. To hear and determine such matters and make such orders as are consistent with

16

the Plan as may be necessary or desirable for the successful implementation of the Plan as provided in Section 945 of the Bankruptcy Code.

K.  To determine, upon petition from the Bond Committee, matters concerning any Emergency Notice delivered by the District to the Bond Committee, including the determination of the existence of an emergency, as defined in this Plan, and the reasonableness of expenditures requested or made pursuant to any such Emergency Notice.

## VIII.  MODIFICATIONS TO PLAN

This Plan may be modified, amended or corrected under Section 942 of the Bankruptcy Code upon application of the District at any time prior to the entry of the Confirmation Order without notice and hearing and without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, provided, however, that the Court find that such modification or correction does not materially and adversely affect any Creditor or the Claim of any creditor.  The Plan may be modified after confirmation upon order of the Court after such notice and opportunity for hearing as may be appropriate.

## IX.  BINDING EFFECT AND DISCHARGE

Confirmation of this Plan shall bind all persons and entities as provided by Section 305 of the Bankruptcy Code and the obligations of the Debtor shall be only those as described and included in this Plan.  All other obligations of the District, including but not limited to those of Construction Fund Warrant holders, shall be discharged.

Confirmation of the Plan will not discharge any Claims which any creditor or interest holder of the District may have against any third party.

The Court, in the Confirmation Order, and at its discretion, will, by its specific language, forever prohibit persons from taking any action in any way which may be inconsistent with this Plan or in violation of the terms or legal effect of the Confirmation Order.

Dated this 2nd day of March, 2007.

**SANITARY AND IMPROVEMENT DISTRICT #425 OF DOUGLAS COUNTY, NEBRASKA**, Debtor

/s/ Mark J. LaPuzza
Mark J. LaPuzza, #22677
Pansing Hogan Ernst & Bachman, LLP
10250 Regency Circle, Suite 300
Omaha, Nebraska 68114
(402) 397-5500

Approved as to form and content:

/s/ Jerry Banks
Jerry Banks, Chairman, Official Committee of Unsecured Creditors

274265v16